## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AMY FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-0614 |
| | ) | |
| NEXSTAR MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff Amy Fox ("Fox"), by and through her attorneys, Katten & Temple, LLP, for her complaint against Defendant Nexstar Media Group, Inc. ("Nexstar"), states as follows:

## **NATURE OF THIS ACTION**

This action arises out of false and defamatory statements made by Nexstar in its attempt to shift blame to Fox after Nexstar's local television station, WOOD-TV, received public backlash when another employee leaked an internal memorandum to the media. To protect itself, Nexstar misled the public and defamed Fox by falsely implying to the public that she had somehow discriminated against LGBTQ persons. Nothing could have been farther from the truth. As Nexstar admitted privately, Fox did *not* discriminate against anyone. Rather, she simply was following Nexstar's news reporting policies and as her supervisor had directed. Nexstar's defamatory statements have destroyed Fox's accomplished twenty-eight-year career in local TV news. Nexstar refused to retract its defamatory statements, and Fox now brings defamation and false light claims against Nexstar.

## PARTIES

1.     Plaintiff Amy Fox is a citizen of Kent County,  Michigan. Fox seeks to recover compensatory damages, punitive damages, and all other relief to which she may be entitled as a matter of law against her former employer, Nexstar Media Group, Inc.

2.     Defendant, Nexstar Media Group, Inc., is a Delaware corporation with its principal place of business in Texas. Nexstar does business in Kent County, Michigan and elsewhere in this state. Its registered agent in the state of Michigan is National Registered Agents, Inc., 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

## JURISDICTION AND VENUE

3.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because it is between citizens of different states and the amount in controversy is greater than $75,000, exclusive of interest and costs.

4.     Venue is proper in this District under 28 U.S.C. § 1391. Nexstar regularly conducts business in this District, and a substantial part of the events giving rise to Plaintiff's causes of action occurred in this District.

## BACKGROUND

### A.     FOX'S SUCCESSFUL PERFORMANCE AT WOOD-TV

5.     Nexstar hired Fox in April 2022 to serve as Assistant News Director at WOOD-TV, an affiliate of NBC in Grand Rapids, Michigan. Her salary was $90,000. Before working with Nexstar, Fox enjoyed a long career in newscasting. She climbed the ranks from reporter and anchor at various TV stations to executive producer and managing editor at WZZM13, an affiliate of ABC in Grand Rapids, Michigan.

6.     At WOOD-TV, Fox reported to former News Director Stanton Tang. As Assistant News Director, Fox's duties included, but were not limited to, the following:

assisting in supervising news department staff, supervising the Executive Producers, attending and managing editorial meetings, organizing and supervising coverage of special events, supervising political reporting, working with the WOOD-TV investigative reporting team, assisting in the interviewing and hiring process, creating and implementing training plans, reviewing scripts as needed, monitoring other news outlets to ensure appropriate news coverage, reviewing employee performance, organizing WOOD-TV's entries into awards contests, acting as a liaison between the News Director and news department staff, and performing any other duties as assigned by the News Director.

7.      During her time at WOOD TV, Fox consistently met or exceeded the expectations of her position. She immediately spent time getting to know employees on all different shifts, and she was described as an approachable, calm presence in the newsroom with a solid dedication to the needs of the newsroom at any given time.

**B.   EVENTS LEADING TO FOX'S WRONGFUL TERMINATION**

8.      Each year, the month of June is celebrated as Pride Month. WOOD-TV posted approximately fourteen Pride-related articles on its website between May 30, 2023 and June 12, 2023.

9.      On June 13, 2023, Tang directed Fox to prepare an internal memorandum (the "Internal Memo") to WOOD-TV's staff reporters, reminding them of WOOD-TV's policies requiring news-worthy reporting and balanced coverage in reporting on Pride-related events in the area. Fox understood the purpose of the Internal Memo to further Nexstar's policies requiring reporting of only news-worthy matters in a fair and balanced manner. Nexstar Standards Guide states, in part, as follows:

We present all points of view . . . . We put our personal biases aside to approach the topics we cover with balance.

Similarly, Nexstar touts itself as promoting its "Journalistic Integrity" policy, which provides: "We pride ourselves in producing local and national news content that is fact-based and unbiased, and meets the highest standards of journalistic integrity. We strive to be a reliable source for news and information. Balance, fairness and accuracy are fundamental to our news coverage. Our journalism principles are: accuracy and truth, fairness and impartiality, independence, transparency, minimize harm, respect the law and follow Nexstar policy."

10. Consistent with Nexstar's policies to present only news, the Internal Memo directed the news staff to "be thoughtful about what Pride events and stories we cover" and "discern the newsworthy-ness of" a Pride event before covering it. It asked reporters to "consider how to make the story balanced . . . ."

11. Fox's supervisor, Tang, directed Fox to draft and distribute the Internal Memo, reviewed the draft, and approved it prior to distribution. Fox reasonably followed the request of her supervisor.

12. After the distribution of the Internal Memo by email, some WOOD-TV employees expressed their objections to its content, mischaracterizing it as "anti-gay" and other derogatory labels.

13. Before the afternoon news meeting on June 13, 2023, Fox emailed WOOD-TV General Manager Julie Brinks to inform her that an employee had texted Fox asking for a representative of human resources to attend the afternoon news meeting. The employee told Fox that "any time we are being encouraged to discriminate against any group, the GM [general manager] and HR [human resources] should be involved." In

response, Brinks told Fox that she "[h]onestly [did] not understand how any of this is discriminating against anyone."

14.     Parts of the Internal Memo and internal matters related to it were soon leaked to media outlets. As early as June 14, 2023, media outlets began falsely and misleadingly reporting that Fox had ordered reporters not to cover Pride-related events.

15.     Instead of acknowledging and explaining the truth – i.e., that the Internal Memo was consistent with Nexstar's policies, including the Nexstar Standards Guide, Nexstar hung Fox out to dry. Nexstar knowingly published false statements that portrayed Fox as anti-gay and implied that she had violated and acted contrary to Nexstar's policies, when in fact she had expressly encouraged staff to follow Nexstar's policies. At least two Executive Producers of Nexstar publicly commented on and criticized portions of the Internal Memo in social media posts.

16.     Nexstar's improper release of and defamatory and misleading comments on the Internal Memo lead to a vast number of harshly negative and disparaging news stories totaling at least 47 articles or internet posts concerning the Internal Memo, Plaintiff's alleged role, Plaintiff's termination of employment, and mislabeling Plaintiff as "anti-gay." Instead of disavowing these false and defamatory statements and implications about Plaintiff and instead of disclosing that the Internal Memo followed Nexstar's own policies and Standards Guide, Nexstar allowed its employees and the media to continue to perpetuate lies about Fox, and further adopted and ratified the misleading, false and defamatory statements of its employees. Nexstar deliberately engaged in an effort to destroy Plaintiff's professional reputation by knowingly publishing false statements that portrayed Plaintiff or implied that Plaintiff was "anti-gay," that Plaintiff had violated Nexstar's news reporting standards, that Plaintiff had acted contrary to Nexstar's values,

and that her conduct warranted the termination of her employment. These statements by Nexstar and the implications from them include false and defamatory implications that arise naturally and clearly from the explicit statements.

17.    As media coverage increased, Nexstar improperly sided with certain public sentiment, ratifying, adopting and/or affirming the false statements on social media and elsewhere of Nexstar's employees accusing Plaintiff publicly of promoting anti-gay positions, acting unprofessionally and engaging in misconduct. These accusations were false. During a purported "investigation" Nexstar made further false and misleading statements directly or by implication, publicly stating that Plaintiff had engaged in misconduct that was "not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers," and added that Nexstar will "take appropriate action as necessary to address the situation," implying disciplinary action. Nexstar then publicly terminated Plaintiff's employment on June 29, 2023.

18.    For example, on June 15, the media outlet for the media profession, The Desk, published a false and misleading article, entitled, "Michigan TV newsroom revolts over anti-gay memo." *See* https://thedesk.net/news/stanton-tang-amy-fox-lgbt-memo-wood-nexstar/#google_vignette.  By mid-June, however, WOOD-TV had published over a dozen news reports regarding Pride month events.

19.    Public news media further reported, that "[a]fter multiple media outlets reported the content of the [Internal Memo] Thursday, Nexstar EVP/Chief Communications Officer Gary Weitman sent the following statement to News 8:"

> Diversity, equity, and inclusion are among Nexstar's core values. Our local TV stations are expected to cover and report the news of the day in an expansive and inclusive fashion, consistent with these values. We're looking into the situation at WOOD-TV, as the communication regarding the station's coverage of PRIDE month activities in the area is not consistent

with Nexstar's values, the way we cover the news, or the respect we have for our viewers. We will take appropriate action as necessary to address this situation, and apologize for offending members of the LGBTQ community and WOOD-TV's viewers.

20.   When Weitman sent this statement for publication, Nexstar was aware of the media coverage calling the Internal Memo "anti-gay." Weitman's false public statement was made intentionally, recklessly and/or negligently without care for its defamatory implications for Fox.

21.   Nexstar further allowed its employees to broadcast publicly false and defamatory statements without any corrections or repercussions. On June 14, 2023, Nexstar employee Ellen Bacca made the following false statements on social media:



**Post**

**Ellen Bacca**
@ellenbacca

The newsroom is not standing for it.

Not only is it incredibly offensive to suggest Pride events be covered less than others -- the fact we were mandated to "curb our coverage" to appeal to a political belief goes against the very heart of what journalism is supposed to be.



> **Rose White** @rosekellywhite · 6/14/23
> A Grand Rapids TV station reportedly told its staff to cover less Pride events because of conservative viewers.
>
> A memo said "If we are covering Pride events, we...

4:07 PM · 6/15/23 From Earth · **155K** Views

**188** Reposts  **26** Quotes  **1.4K** Likes  **12** Bookmarks

**Detroit Van Dough** @DetroitVa... · 6/16/23
@wxblakeharms must be tough to be the only hateful person in an inclusive workplace.

Post your reply

At no time, however, did Fox ever direct employees to cover Pride events "less than others."

22.     On June 15, 2023, Nexstar employee Michelle Deselms posted the following false and misleading statement on social media, wrongly implying that Fox is somehow discriminating against the LGBTQ community:



23.

24.    Nexstar failed to correct this false and misleading statement and did not take corrective action.

25.    Also on June 15, 2023, Stier and fellow Executive Producer Madeline Odle publicly tweeted their criticisms of Fox and the Internal Memo. Stier stated that the guidance in the Internal Memo "is not being followed":



26.     Odle stated that the Internal Memo "does not reflect our views":



27.     Fox received an email inquiry from CNN on the afternoon of June 15, 2023, which Fox forwarded to Brinks. Brinks replied that she was "so sorry this has gone so far" and that "it should have never le[f]t the confines of our station and company. Its [sic] our internal situation to resolve." Brinks later told Fox via email that she would "do what I can to support you and ensure a fair process as we figure out how to move forward." Despite Brinks' promises, Nexstar violated its own policies that required a fair process for Fox.

28.     Specifically, despite the false reassurances to Fox and in violation of Nexstar's policies, on June 16, 2023, Brinks sent an email to the entire WOOD-TV staff implying false and defamatory information about Fox and painting her in a bad light. It stated, in part, as follows:

> I want to address the issues raised by Tuesday's note to news staff regarding
> our ongoing coverage of the area's PRIDE month activities. I want to be very

clear: The note does not reflect our values, the way we cover the news, or the respect we have for our viewers. WOOD-TV is and always will be committed to diversity, equity, and inclusion and to covering and reporting the news of the day in an expansive and inclusive fashion, consistent with these values. And, in case it wasn't clear from the news staff meeting and follow up note Tuesday, and Wednesday morning meetings, we are NOT changing our coverage of events connected to PRIDE month.

I know the note offended many of you, and I am sorry for that. As you may know by now, members of our senior HR team are investigating what happened here. This is an internal employee relations issue, and we have a process for handling these types of situations. I am sure that we will work through this issue like the professional colleagues that we are and I am grateful for your cooperation and support as the process moves forward.

29.     Nexstar affirmatively issued and publicized a version of this statement to the media, in which Brinks said that Nexstar would "take appropriate action as necessary to address this situation, and we apologize for offending members of the LGBTQ community and WOOD-TV's viewers."[1]

30.     As media coverage increased, Nexstar failed to reject false accusations in the media that were originally made by WOOD-TV employees and then repeated in

---

[1] *TV News Owner Apologizes for Pride Month Memo that Told Michigan Staff to Cover Fewer LGBTQ+ Events*, AP News (June 16, 2023, 12:10 PM), https://apnews.com/article/lgbtq-pride-month-woodtv-michigan-c7094b8cabfbc84e9c7b21f1b774bd10.

publications such as The Desk,[2] Blaze Media,[3] Detroit Free Press,[4] Fox News,[5] and the Daily Mail.[6]

31.     Public statements by Nexstar corporate representatives such as Weitman and Brinks, when juxtaposed with media coverage calling the Internal Memo, among other things, "anti-gay," falsely implied that Fox had engaged in misconduct and acted unprofessionally.

32.     Nexstar made no effort to clarify or explain to its staff or the public that in recommending that reporting be news-worthy and balanced in the reporting staff's coverage of Pride Month, Fox was acting in accordance with Nexstar's journalism standards and following the directive of her supervisor.

33.     Nexstar knew or should have known that its statements (including the statements of its employees acting as Nexstar's agents) and the implications of those statements in the context of the media coverage were false and defamatory towards Fox.

---

[2] Matthew Keys, *WOOD-TV news director Stanton Tang fired over anti-gay memo; Nexstar also dismisses Amy Fox, writer of the memo,* THE DESK (June 29, 2023), https://thedesk.net/news/stanton-tang-fired-nexstar-memo-wood-tv/#google_vignette.

[3] Carlos Garcia, *Producers and Reporters Refuse to Tone Down LGBTQ Coverage After Local Station Tells Them to Present Both Sides Over Conservative Backlash*, BLAZE MEDIA (June 15, 2023), https://www.theblaze.com/news/woodtv-rebels-pride-coverage-memo.

[4] Frank Witsil, *WOOD-TV in Grand Rapids Under Fire for Internal Memo Calling for Less LGBTQ Pride Coverage*, DETROIT FREE PRESS (June 16, 2023, 1:37 AM), https://www.freep.com/story/news/local/michigan/2023/06/15/wood-tv-lgbtq-reports-memo/70326709007/.

[5] *Michigan News Outlet GM Apologizes for Memo Warning Against 'Polarizing' Pride Month Coverage*, FOX NEWS (June 16, 2023, 7:49 PM), https://www.foxnews.com/us/michigan-news-outlet-gm-apologizes-memo-warning-polarizing-pride-month-coverage.

[6] Joe Hutchison, *News Director and Three Other Staffers Fired from Michigan TV Station over 'Anti-Gay' Memo Which Encouraged Reporters to Get 'Both Sides' of LGBTQ Issues and to Be Discerning About Which Pride Events to Cover*, DAILY MAIL (July 1, 2023, 2:27 PM), https://www.dailymail.co.uk/news/article-12253353/News-director-three-staffers-fired-Michigan-TV-station-anti-gay-memo.html.

### C.    NEXSTAR'S SHAM INVESTIGATION AND WRONGFUL TERMINATION OF FOX'S EMPLOYMENT

34.    Although On June 18, 2023, Fox and Brinks had a phone conversation in which Brinks told Fox how the investigation would progress, Nexstar did not conduct a proper, unbiased investigation.

35.    On June 29, 2023, Nexstar terminated Fox's employment without explanation. When she later requested her personnel records, those records lacked any explanation for the termination. However, much later, Nexstar provided a memorandum to her former supervisor, Tang, in response to his request for personnel records that purported to state the reasons for Fox's termination. Those purported reasons were false and defamatory and Nexstar never provided them to Fox nor afforded her any opportunity to submit a corrective statement for her personnel records.

36.    Since her termination of employment with Nexstar, Fox has been unable to secure new employment in her profession. Nexstar's defamatory statements made in connection with the Internal Memo have resulted in substantial monetary and nonmonetary damages to Fox, including but not limited to lost income, lost benefits, emotional distress, humiliation, and reputational damage. Fox is not a public figure.

### COUNT I
### *Defamation*

37.    Plaintiff Amy Fox realleges paragraphs 1 through 36 of this complaint as though fully set forth herein.

38.    Nexstar made materially false and defamatory statements of and concerning Fox. Those false and defamatory statements include but are not limited to the following:

    a.    Gary Weitman's statement that the Internal Memo "is not consistent with Nexstar's values, the way we cover the news, or the respect we have for our viewers";

    b.    Gary Weitman's statement that Nexstar's "local TV stations are expected to cover and report the news of the day in an expansive and inclusive fashion," in the context of media coverage calling the Internal Memo "anti-woke"; and

    c.    Julie Brinks's statement that "Nexstar will take appropriate action as necessary to address this situation," in the context of media coverage on Fox's termination for the "anti-gay" Internal Memo;

    d.    Multiple statements by Nexstar employees suggesting that Fox is "anti-gay" and had violated Nexstar's policies and standards.

39.    The statements were injurious to Fox's reputation.

40.    The statements made by Nexstar were published to third parties.

41.    Fox is not a public figure.

42.    Nexstar's publication of the defamatory statements of and concerning Fox were published negligently, recklessly, and/or intentionally.

43.    As a direct and proximate result of the foregoing defamatory statements by Nexstar, Fox suffered injuries, including injuries to her reputation that have made any chance she may be able to continue her career in journalism next to impossible.

44.    Monetary losses incurred by Fox include loss of earnings, loss of earning capacity, damage to her reputation, mental and emotional distress, humiliation, and embarrassment.

45.    Fox requested that Nexstar retract its defamatory statements and Nexstar failed to do so. Accordingly, Fox also seeks exemplary and punitive damages pursuant to MCL § 600.2911(b).

## COUNT II
### *False Light*

46.    Plaintiff Amy Fox realleges paragraphs 1 through 45 of this complaint as though fully set forth herein.

47.    Nexstar wrongfully disclosed statements of and concerning Fox to the general public.

48.    The statements were highly objectionable to a reasonable person and attributed to Fox characteristics, conduct, and beliefs that were false and placed Fox in a false light.

49.    Nexstar knew or acted in reckless disregard as to the falsity of the disclosed information and the false light in which Fox would be placed.

50.    Nexstar's wrongful behavior caused Fox loss of earnings, loss of earning capacity, damage to her reputation, mental and emotional distress, humiliation, and embarrassment.

## COUNT III
### *Violation of the ERKA, MCL § 423.501, et seq.*

51.    Plaintiff realleges paragraphs 1 through 50 of this complaint as if fully set forth herein.

52.    Plaintiff is an employee and Defendant is an employer as defined in the Employee Right to Know Act ("ERKA"). The ERKA defines "employee" as a person "currently employed or formerly employed by an employer," MCL § 423.501(2)(a), while "`[e]mployer' means an individual . . . or commercial entity, which has 4 or more

employees and includes an agent of the employer," MCL § 423.501(2)(b). Per the ERKA, "personnel record" means "a record kept by the employer that identifies the employee to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action." MCL § 423.501(2)( c).

53.     The ERKA also provides that "[a]n employer shall not divulge a disciplinary report, letter of reprimand or other disciplinary action to a third party, [or] to a party who is not part of the employer's organization without written notice." M.C.L. § 423.506. The employer must provide the written notice to the employee regardless of the form of the communication – written or oral – about that employee to the third party. The written notice to the employee must be by first-class mail to the employee's last known address, and must be mailed on or before the day the information is divulged from the personnel record. MCL § 423.506.

53.     Nexstar violated MCL § 423.506 by notifying news media outlets of disciplinary action taken against Plaintiff, without providing Plaintiff with the written notice required by MCL § 423.506, including but not limited to, the following instances:

     a. Plaintiff was informed she was fired on June 29, 2023.  That same day, Gary Weitman, a Nexstar spokesperson, confirmed to CNN and to Crains Grand Rapids Business that the company had made changes to WOOD-TV's newsroom leadership team to "**ensure its ability to continue providing outstanding local news coverage and service to the Grand Rapids community and surrounding area . . . .**" The same article noted that Stanton Tang, News Director of Grand Rapids-based WOOD-TV, and Amy Fox, the station's assistant news director, had been fired.  "**As these are internal personnel decisions involving matters of personal privacy, we will decline further comment,**" Weitman said. Reilly,

Liam (6.30.2023 at 5:30 pm);

b. In addition, Nexstar made further disclosures of disciplinary personnel actions regarding Plaintiff without the required written notice. ***See News directors at Michigan TV station ousted after telling staff to 'get both sides' of Pride coverage,*** CNN.COM, https://www.cnn.com/2023/06/30/media/michigan-news-directors-fired-pride-coverage/index.html; and Balaskovitz, Andy (6.30.2023), ***Firings at WOOD-TV8 in fallout from Pride Month coverage memo,*** CRAINS GRAND RAPIDS BUSINESS, https://www.crainsgrandrapids.com/news/media-marketing/firings-at-wood-tv8-in-fallout-from-pride-month-coverage-memo/ .

54.    The ERKA provides an employee or former employee the right to seek expungement of any "false" information the employer knowingly places in his personnel record, MCL § 423.505, and the right to receive a written notice of an employer's act of divulging a disciplinary report, letter of reprimand or other disciplinary action concerning the employee to a third party, or to a party who is not part of the employer's organization. MCL § 423.506.

55.    Nexstar deliberately committed multiple violations and infringements of Plaintiff's rights under the ERKA, including but not limited to, public dissemination of the termination of Plaintiff's employment, explicitly and implicitly communicating to third parties that Plaintiff was terminated for disciplinary action in violation of Nexstar's policies and professional journalism standards.  That assertion is false and defamatory. Nexstar also created a false and defamatory memorandum purporting to state the reason for Plaintiff's termination of employment as part of Nexstar's personnel records that wrongly alleged that she was terminated for violating Nexstar's standards.

56.    On information and belief, Nexstar willfully violated the ERKA by deliberately obstructing and/or impeding and/or preventing Plaintiff from submitting

her own written response to the false performance-related personnel record created by Nexstar in violation of MCL § 423.505.

57.     Nexstar's willful violations of the ERKA have damaged Plaintiff as described herein and below, and entitles Plaintiff to injunctive relief, $200 plus actual damages, costs, and reasonable attorney fees.

58.     As a proximate result of Nexstar's wrongful actions as described above, Plaintiff has suffered losses including, but not limited to, damages to her professional reputation as well as emotional and psychological damages as a direct and proximate result. Plaintiff's damages were proximately caused by the actions of Nexstar as described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant on each Count in this Complaint as follows:

A.     Enter judgment on an award for compensatory damages and punitive damages for Plaintiff as determined by a jury after trial;

B.     Enter judgment for statutory damages and for an equitable award for Plaintiff for back pay, front pay, and costs incurred by Plaintiff as a result of the lost healthcare and other employee benefits;

C.     Grant injunctive relief in favor of Plaintiff requiring Defendant to expunge false and defamatory information from Plaintiff's personnel records;

D.     Award Plaintiff prejudgment interest and her costs and reasonable attorneys' fees incurred; and

E.     Grant such further relief as may be equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by a jury.

Dated: June 11, 2024                                    Respectfully submitted,


                                            By:    */s/ Nancy A. Temple*
                                                   One of Plaintiff's Attorneys

Nancy A. Temple
Katten & Temple, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
312-663-0800
ntemple@kattentemple.com