**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| AMY FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-0614 |
| | ) | |
| NEXSTAR MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| STANTON TANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-0616 |
| | ) | |
| NEXSTAR MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Nancy Temple
KATTEN TEMPLE, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL  60604
TEL: (312) 663-0800
ntemple@kattentemple.com

Todd Knecht
Knecht Law
4999 N. Quail Crest Dr. SE
Grand Rapids, MI 49546
TEL: 616-308-4716
trknechtlaw@gmail.com

*Attorneys for Plaintiffs*

Richard W. Warren (P63123)
OGLETREE DEAKINS, PC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
richard.warren@ogletree.com

*Attorneys for Defendant*

## DEFENDANT'S MOTION FOR RECONSIDERATION

NOW COMES Defendant, Nexstar Media Inc., ("Defendant" or "Nexstar") by and through

its attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, PC, and respectfully moves this Court

pursuant to Fed. R. Civ. P. 59(e) and W.D. Mich. LCivR 7.4 for an Order granting Reconsideration of the Court's Orders Granting in Part and Denying in Part Defendant's Motions for Summary Judgment (ECF No. 92 in Case No. 24-cv-00614 and ECF No. 77 in Case No. 24-cv-00616). Based on the law and facts set forth in Defendant's accompanying Memorandum in Support, there is a palpable defect by which the Court was misled, the correction of that defect would yield a different disposition of the case, there are no genuine issues as to any material fact, and Defendant is entitled to judgment as a matter of law.

Accordingly, Defendant respectfully requests that this Court issue an Order granting Reconsideration of that part of the Court's Orders Denying in Part Defendant's Motions for Summary Judgment.

Respectfully submitted,

 /s/ Richard W. Warren
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, PC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603

Dated: April 14, 2026                          richard.warren@ogletree.com

2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| AMY FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-0614 |
| | ) | |
| NEXSTAR MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| STANTON TANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2024-cv-0616 |
| | ) | |
| NEXSTAR MEDIA GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Nancy Temple
KATTEN TEMPLE, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL  60604
TEL: (312) 663-0800
ntemple@kattentemple.com

Todd Knecht
Knecht Law
4999 N. Quail Crest Dr. SE
Grand Rapids, MI 49546
TEL: 616-308-4716
trknechtlaw@gmail.com

*Attorneys for Plaintiffs*

Richard W. Warren (P63123)
OGLETREE DEAKINS, PC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
richard.warren@ogletree.com

*Attorneys for Defendant*

**<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION</u>**

## I.     **INTRODUCTION**

As a result of Plaintiffs' arguments in Response to Defendant's well-founded Motions for Summary Judgment, the Court was misled into issuing an Order[1] Granting in Part and Denying in Part Defendant's Motion for Summary Judgment (ECF No. 92). The Order contains several palpable defects which, if corrected, must result in a different disposition of these two cases. As outlined below, the Court's Order contains erroneous factual conclusions, misapplies key legal holdings, and overlooks critical record evidence. Absent these errors, the Court would have granted Defendant's Motion for Summary Judgment in its entirety. As Defendant was not given the opportunity to address these issues in an oral argument regarding Defendant's Summary Judgment Motion, Defendant respectfully requests that the Court issue an Order granting Reconsideration of that part of its Order Denying, in Part, Defendant's Motion for Summary Judgment.  The record-based reasons for this request are set forth below.

## II.    **LAW & ARGUMENT**

### A.     **Standard of Review**

"[A] court may reconsider a prior ruling 'to address an erroneous factual conclusion, because the Court overlooked or misconstrued the record, or to correct a misunderstanding of the law, because the Court applied the wrong standard, wrong test, relied on bad precedent, or something similar.'" *Baker, Confectionery, Tobacco Workers & Grain Millers v. Kellogg Co.,* 2017 U.S. Dist. LEXIS 214792, at *3 (W.D. Mich. Oct. 19, 2017), citing *Fleet Eng'rs, Inc. v. Mudguard Techs., LLC,* No. 1:12-cv-1143, 2013 WL 12085183, at *1 (W.D. Mich. Dec. 31, 2013). Western

---

[1] As the Court issued the same Order in both 1:24-cv-00614 and 1:24-cv-00616 with record citations to 1:24-cv-00614, Defendant will do the same herein. References to the Court's Order shall refer to the Order issued in both cases, and references to Defendant's Summary Judgment Motion shall refer to the similar Summary Judgment Motions Defendant filed in both cases. Record citations shall reflect the ECF and PageID number of Case No. 1:24-cv-00614.

District of Michigan Local Rule 7.4 further clarifies that the party moving for reconsideration shall demonstrate a "palpable defect" by which the court and parties have been misled which must result in a different disposition of the case. W.D. Mich. LCivR 7.4(a).

**B.**     **Reconsideration of that Part of the Court's Order Denying Defendant's Motion for Summary Judgment, in Part, is Proper and Necessary**

Reconsideration of the Court's Order in *Fox* and *Tang* is proper because the Court's Order contains several palpable defects which, if corrected, must result in a different disposition of both cases. First, with regard to the question of whether the Internal Memo that Plaintiffs Amy Fox ("Fox") and Stanton Tang ("Tang," and with Fox, "Plaintiffs") distributed was consistent with Nexstar's values, both Plaintiffs and the Court cited to the incorrect "value" at issue – focusing on whether the Internal Memo was discriminatory as opposed to whether it violated Nexstar's journalism standard that prohibits special interests from influencing news reporting.  No Nexstar decisionmaker testified that the Company had to terminate Plaintiffs because they engaged in discrimination.  Nor did any Nexstar statement state that Plaintiffs engaged in discrimination.  In short, the Standard that Plaintiffs and the Court focused on had no relevance to either the facts actually at issue or controlling law.

Second, both Plaintiffs and the Court improperly relied on Julie Brinks' ("Brinks") testimony regarding the Internal Memo and Nexstar's journalism standards as testimony binding on all of Nexstar, despite the fact that Brinks is not a corporate representative of Nexstar and does not have authority to decide upon or speak to Nexstar's journalism standards.

Third, the Court was misled into incorrectly applying the legal standard for defamation by implication, mistakenly relying on the decisions in *Hawkins v. Mercy Health Servs., Inc.,* 582 N.W.2d 725 (Mich. App. 1998) and *Reighard v. ESPN, Inc.,* 991 N.W.2d 803 (Mich. App. 2022)

to impermissibly extend the scope of defamation by implication to protected opinion speech which is not "provable as false."

Fourth, the Court was misled into misconstruing the holding in *McManamon v. Redford Charter Twp.*, 273 Mich. App. 131 (2006) and overlooked critical record evidence concerning the prior publicity of Plaintiffs' terminations to erroneously hold that a jury could find that Nexstar violated the Employee Right to Know Act ("ERKA"). Defendant addresses each of these palpable defects in turn below.

1. **The Court and Plaintiffs mistakenly focus on whether the Internal Memo is discriminatory as opposed to whether it violates Nexstar's journalism standards.**

Plaintiffs' defamation and false light claims are premised on the erroneous allegation that Nexstar's First and Second statements are false and defamatory because contrary to those Statements, the Internal Memo *was* in line with Nexstar's values. In denying Nexstar's Motions for Summary Judgment, the Court held that "the record contains evidence from which a reasonable jury could conclude that some members of Nexstar's leadership team *did* believe the memo aligned with Nexstar's values." ECF No. 92, PageID.1271. After being misled by Plaintiffs, the Court then went on to mistakenly find that Julie Brinks "indicated numerous times that she believed the memo was in line with Nexstar's journalistic standards[.]" *Id.* at 1271-72. But the portions of Brinks' testimony cited by the Court do not support this mistaken finding, as Brinks never testified that the Internal Memo was in line with Nexstar's journalistic standards. *See Id.,* the Court's citations to Brinks' testimony at ECF No. 83-4, PageID.1107 (testifying that she didn't think the Internal Memo was discriminatory but confirming that she didn't compare it to Nexstar's journalistic standards), PageID.1114 (testifying that she didn't think the Internal Memo was intended to hurt people but never testifying about Nexstar's journalistic standards), and PageID.1116-17 (testimony merely confirming that Tang wrote an email which mentions Nexstar's journalistic principles but

4

never testifying that the Internal Memo was in line with such principles or giving any opinion of her own on the matter).  In fact, Brinks specifically testified that the Internal Memo may *not* align with Nexstar's values since the determination to pull back coverage was done in response to viewer feedback. *See* ECF No. 74-3, PageID.518. From an objective perspective, the record evidence set forth in Brinks' testimony simply does not provide any support at all for the Court's conclusions.

Neither the Court nor Plaintiffs cited any testimony by Brinks or anyone else which could be construed as Nexstar (or even Brinks) believing that the Internal Memo was in line with its journalistic values. To the contrary, even the Court's Order plainly sets forth how the Internal Memo was directly motivated by trying to appease the station's more conservative viewers, a clear violation of Nexstar's journalistic values, which state: "We do not act on behalf of special interests." Specifically, the Court wrote:

> Tang was also worried that the volume of Pride stories being covered by WOOD-TV news staff was alienating some of the station's more conservative viewers … Tang shared his concerns with Assistant news Director, Amy Fox … To address these concerns, he asked Fox to draft an email to the newsroom.

ECF No. 92, PageID.1263 (record citations omitted). There is no dispute that – as the Court found – the action of drafting and distributing the Internal Memo was done on behalf of a special interest (conservative viewers) in clear violation of Nexstar's journalistic standards. But the Court's Order entirely fails to address this, instead focusing on whether the Internal Memo was discriminatory. Indeed, the Court's Order does not reference the correct standard – i.e., Nexstar's "special interest" standard – *even once* throughout its entire Opinion.  This establishes that, despite its effort and intent to reach the correct result, the Court's conclusion was clearly misaligned with the record evidence and is a defect the correction of which would require a different result.

This is a palpable defect in the Court's Order as it goes to the heart of Plaintiffs' defamation and false light claims – i.e., whether the Internal Memo was in line with Nexstar's values and Standards Guide. By focusing on a completely different, and irrelevant, value (discrimination), both Plaintiffs and the Court disregarded the actual value/standard at issue – the Internal Memo's direct noncompliance with Nexstar's journalistic values through its promotion of a special interest at the expense of simply covering the news. Absent this defect, or by a correction thereof, the Court would have granted Defendant's Summary Judgment Motion with regard to Plaintiffs' defamation and false light claims because there is no other record evidence cited to suggest that Nexstar *did* believe that the Internal Memo was in line with its values, and all of the record evidence demonstrated that Nexstar concluded that Fox and Tang's memo violated its Standards. Granting Reconsideration of the Court's Order regarding Plaintiffs' defamation and false light claims is therefore warranted on this single defect alone.

      **2.**    **The Court and Plaintiffs improperly construed Brinks' testimony as binding on all of Nexstar and disregarded the testimony of Susan Tully and Other Actual Corporate Representatives of Nexstar.**

The Court's reliance on Brinks' testimony to support Plaintiffs' defamation and false light claims further constitutes a palpable defect because Brinks is not a corporate representative or leader of Nexstar with authority to speak to Nexstar's journalistic standards/values – she is the General Manager of a local TV station which Nexstar owns. In its Order, the Court referred to Brinks as a "member[] of Nexstar's leadership team" before citing her above-referenced testimony regarding discrimination to support Plaintiffs' defamation and false light claims. ECF No. 92, PageID.1270. But Julie Brinks is not a member of Nexstar's leadership team – as set forth throughout even the limited portions of testimony filed by Plaintiffs in response to Defendant's Summary Judgment Motions. *See* ECF No. 83-4, PageID.1108; PageID.1111 ("**Q:** All right. But you didn't do anything because at this point you let Nexstar corporate handle it. You didn't have

6

the authority? … **A:** Again, this was multi-layered and corporate was involved to walk through a challenging situation."), PageID.1117 ("I – I can't help you on. This is a – this is at a corporate level review.").  Brinks' testimony on this point was clear and unambiguous, demonstrating that there was no factual basis in the record supporting the Court's conclusion.

Brinks' sworn testimony confirms that she is not a corporate officer of Nexstar or member of Nexstar's leadership team.  Given this, even if she *had* testified that the Internal Memo was in line with Nexstar's values (which as set forth above, she did not), the Court mistakenly assigned corporate authority to the testimony of a lower-level employee of Nexstar without any record support for that conclusion. In exclusively relying on Brinks' testimony, the Court altogether disregarded the testimony of Susan Tully ("Tully"), the actual corporate representative of Nexstar responsible for Nexstar's journalistic standards who testified in detail regarding all the ways that the Internal Memo violated Nexstar's journalistic values. *See, e.g.,* testimony of Susan Tully, ECF No. 74-5, PageID.535-36; 539 (testifying that the Internal Memo violated Nexstar's values and journalism standards because it was advocating on behalf of a special interest). Indeed, the Court's Order does not even reference Tully or her testimony despite the undisputed fact that Tully was the authority on Nexstar's journalistic standards.

Nor does the Court's Order reference any testimony from other individuals who, unlike Brinks, are actual corporate representatives of Nexstar. *See, e.g.,* testimony of Senior Vice President and Regional Manager Theresa Underwood, ECF No. 74-11, PageID.592 ("the memo was not appropriate, not well worded, and violated company standards." … "[Fox] also referenced [] the fact that this was being done in response to viewer feedback. And while we welcome viewer feedback, and leadership should take all feedback into consideration, we do not slant any of our coverage for any particular group or viewer."); *see also* testimony of Executive Vice President and

Chief Communications Officer Gary Weitman, ECF No. 74-14, PageID.601 (testifying that the Internal Memo was not consistent with Nexstar's values).

Thus, the Court's Order contains another palpable defect because Brinks' testimony is the only record evidence that the Court (mistakenly) relies on to support the notion that a reasonable jury could conclude that Nexstar *did* believe the Internal Memo was in line with its values. Absent this defect, or by a correction thereof, the Court would have granted Defendant's Summary Judgment Motion with regard to Plaintiffs' defamation and false light claims because there is no testimony from an actual corporate representative of Nexstar which suggests that Nexstar *did* believe that the Internal Memo was in line with its journalistic values – only a litany of testimony outlining how the Internal Memo did *not* align with Nexstar's values. Reconsideration of the Court's Order regarding Plaintiffs' defamation and false light claims is therefore warranted on this additional defect.

### 3. The Court and Plaintiffs incorrectly applied the legal standard for defamation by implication.

The third palpable defect in the Court's Order concerns the misapplication of the legal standard for defamation by implication. While the Court's Order correctly states that a claim for defamation by implication can arise when two true statements are "juxtaposed in such a way that they imply an idea that is false" (ECF No. 92, PageID.1271), in denying Defendant's Motion for Summary Judgment, the Court failed to identify any idea implied by Nexstar's Statements that is, or could be, false and defamatory. Rather, the Court erroneously and mistakenly concluded that "a reasonable jury could reach the conclusion that Nexstar was deliberately spreading the message that Fox and Tang are anti-gay[.]" ECF No. 92, PageID.1274. But even if Nexstar's statements did imply that Fox and Tang are anti-gay (which Nexstar disputes), this implication – as a matter of law – is not provable as false and defamatory such that it could give rise to a claim for defamation

by implication. *See, e.g., Druskinis v. StopAntisemitism,* 766 F.Supp. 3d 723, 737 (E.D. Mich. Dec. 4, 2024) (dismissing defamation claims because "labeling [plaintiff's] conduct as antisemitic is a protected opinion because such claim is not 'provable as false.' Whatever biases or prejudices [plaintiff] may hold in his heart are not verifiable by the Court – or anyone else, for that matter." (citing *Milkovich v. Lorain J. Co.,* 497 U.S. 1 (1990)).

In reaching its conclusion, the Court was misled into improperly relying on two cases cited by Plaintiffs, *Hawkins v. Mercy Health Servs., Inc.,* 582 N.W.2d 725 (Mich. App. 1998) and *Reighard v. ESPN, Inc.,* 991 N.W.2d 803 (Mich. App. 2022). But *Hawkins* and *Reighard* found defamation by implication to exist where the implication was that the plaintiff had been suspended or terminated for committing illicit/illegal actions in which the plaintiffs had not engaged, which is what made the implications false and defamatory. The implication in this case is that Plaintiffs were terminated for drafting and sending the Internal Memo. This implication is neither false nor defamatory, but true based upon undisputed and clear testimony.

Absent this misapplication of law, the Court could not have found a question of fact to exist with regard to Plaintiff's defamation by implication claims, as the only two implications identified by Plaintiffs and the Court (that Plaintiffs are anti-gay and that they were fired for sending the Internal Memo) are not defamatory as a matter of law. Because a plaintiff cannot sustain a defamation by implication claim without identifying an implication that is false and defamatory, and neither the Court nor Plaintiff have identified any false or defamatory implications, a different disposition of Plaintiff's defamation by implication claims must therefore result.

### 4. The Court and Plaintiffs misconstrued the holding in *McManamon* and overlooked record evidence regarding the publicity of Plaintiffs' terminations.

Lastly, the Court's Order contains palpable defects with regard to its holding on Plaintiffs' Bullard-Plawecki Employee Right to Know Act claims, as the Order misconstrued the legal

9

holding in *McManamon v. Redford Charter Township*, 273 Mich. App. 131 (2006) and, in doing so, overlooked critical record evidence which showed that Plaintiffs' termination was already public information and thus was not "divulged" by Gary Weitman ("Weitman"). The Court's Order correctly summarizes that in *McManamon,* an employer representative "told a newspaper that the plaintiff had been suspended," therefore divulging a disciplinary action. ECF No. 92, PageID 1279. But the Court's Order then goes on to erroneously state that the *McManamon* Court "confirms that an employer *does* violate the ERKA when it confirms or elaborates on disciplinary action to the media without providing notice." *Id.* But this is not what the *McManamon* decision says.

To the contrary, the *McManamon* decision says nothing about confirming or elaborating on disciplinary action, it is solely focused on whether the employer *divulges* a disciplinary action that is not already a matter of public record. *See McManamon,* 273 Mich. App. at 136 ("There was no evidence that at the time [employer] spoke with [reporter], plaintiff's suspension was already a matter of public record; therefore, [employer] divulged that fact to [reporter]."). As such, the *McManamon* court found that the employer had violated the ERKA because the employer divulged the employee's suspension when the reporter had only asked about an indictment.

In the instant case, the Court's Order contends that Weitman's emails may similarly violate the ERKA "because Weitman divulged [the terminations] to the press" and "[a]t the time, the only 'public' information about Fox and Tang's terminations consisted of unverified social-media rumors." ECF No. 92, PageID.1279-80. But in doing so, the Court misinterpreted Weitman's statement and overlooked critical record evidence of a news article from The Desk which proved that the Plaintiffs' terminations were already a matter of public record. *See* ECF No. 74, PageID.667-76. This news article – published on June 29, 2023, *before* Weitman's emails with reporters Reilly and Balaskovitz – is much more than an "unverified social-media rumor," as the

10

Court claims in its Order. The article, citing unnamed sources, provided in-depth details regarding the terminations of Fox, Tang, Odle, and Stier, including the name of the individual who would be replacing Tang, the timeline for hiring permanent replacements, and other detailed information. Further, Weitman did not volunteer information regarding Plaintiffs' terminations after being asked about a different topic, as was the case in *McManamon.* To the contrary, both reporters asked Weitman about the terminations, showing that they were already aware of the disciplinary actions taken against Plaintiffs, unlike in *McManamon* where the reporter was not already aware of the disciplinary action. Indeed, Balaskovitz specifically referenced the June 29, 2023 article from The Desk in his correspondence with Weitman, further proving that Weitman was not the one to "divulge" Plaintiffs' terminations. *See* ECF 74-23, PageID.654.

By overlooking this critical record evidence and misconstruing the holding in *McManamon*, the Court erroneously held that a jury could determine that Weitman "divulged" Plaintiffs terminations. But by considering the news article published by The Desk on June 29, 2023 *prior* to Weitman's statements, and properly applying the holding in *McManamon* (ERKA liability only where there was no evidence that the disciplinary action was already a matter of public record), the Court could not have found that Weitman was the one to "divulge" Plaintiffs terminations for purposes of violating the ERKA. By correcting these errors, a different disposition of the Plaintiffs' ERKA claims must result, as no genuine issue of material fact exists to deny Defendant's Motion for Summary Judgment on these claims.

## III.     CONCLUSION

For the foregoing reasons, Nexstar respectfully requests that the Court grant its Motion for

Reconsideration in its entirety and issue any other relief which the Court may deem just and proper.


Respectfully submitted,

/s/ Richard W. Warren
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, PC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
Dated: April 14, 2026                         richard.warren@ogletree.com

## CERTIFICATE OF COMPLIANCE

I certify that the text of this *Brief in Support of Defendant Nexstar Media Inc.'s Motion for Reconsideration*, as counted by Microsoft Word 2016, consists of 3,210 words including heading, footnotes, citations, and quotations (but excluding the case caption, cover page, table of contents, table of authorities, the signature block, this certificate of compliance, certificate of service, and exhibits) and complies with the requirements of Local Civil Rule 7.2(b)(i) and (ii) of the United States District Court for the Western District of Michigan.

As permitted by Local Civil Rule 7.2(b)(ii), the undersigned has relied upon the word count feature of this word processing system in preparing this Certificate of Compliance.

Respectfully submitted,

/s/ Richard W. Warren
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, PC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
richard.warren@ogletree.com

Dated: April 14, 2026

13

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 14, 2026, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys

of record.

<div style="margin-left:45%">

 */s/ Richard W. Warren*
Richard W. Warren (P63123)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, PC
*Attorneys for Defendant*
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
TEL: (248) 631-3679
FAX: (248) 593-2603
richard.warren@ogletree.com

</div>

<div style="text-align:center">14</div>